FILED
CLERK, U.S. DISTRICT COURT

July 31, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____TS_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TROY HOPKINS, | Case No. ED CV 14-0657-DFM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Troy Hopkins appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Supplemental Security Income ("SSI") benefits. Because the ALJ's decision of was supported by substantial evidence in the record, as discussed below, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his application for benefits on July 21, 2010, alleging disability beginning April 15, 2006. Administrative Record ("AR") 33. The ALJ found that Plaintiff had the severe impairments of obstructive sleep apnea

and schizoaffective disorder. AR 35. The ALJ concluded that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economy which he could perform despite his impairments. AR 41.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in failing to: (1) find that Plaintiff's head and spinal trauma, hypertension, and mood disorder were severe at step two; (2) ascribe greater functional limitations in the residual functional capacity ("RFC") assessment due to sleep apnea; (3) assess the effects of Plaintiff's medications; (4) find that Plaintiff meets or equals Listings 12.04 or 12.05(C) at step three of the sequential evaluation process; and (5) evaluate certain forms authored by Plaintiff's social worker. See Pl.'s Summary at 4-5, 8-10 (Dkt. 29), Pl.'s Cross-Motion for Summary Judgment at 2-3 (Dkt. 32); Def.'s Cross-Motion for Summary Judgment at 2 (Dkt. 31).

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); see also 42 U.S.C. § 405(g). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401(1971); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must

2

review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## DISCUSSION

**A.    The ALJ Properly Determined that Plaintiff's Other Impairments Were Nonsevere**

Plaintiff contends that the ALJ should have found conditions of head and spinal trauma, mood disorder, tuberculosis, and hypertension to be severe at step two of the sequential evaluation. Pl.'s Summary at 2-3. The step two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at step two "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, (1987). "An overly stringent application of the severity requirement, however, violates the [Social Security Act] by denying benefits to claimants who do meet the statutory definition of disabled." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Yuckert, 482 U.S. at 156-58).

A severe impairment or combination of impairments exists when these impairments have more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; see Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); 20 C.F.R. § 416.921(a) ("An impairment or

combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); see Webb, 433 F.3d at 686. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (citation omitted).

At step two of the sequential evaluation, Plaintiff bears the burden of proof to show that his impairments are severe and that they meet the durational requirement. Johnson v. Shalala, 60 F.3d 1428, 1432 (1995). Here, Plaintiff has failed to meet that burden as to his head and spinal trauma, mood disorder, tuberculosis, and hypertension. First, with respect to alleged "spinal and head trauma," Plaintiff has not pointed to any medical records documenting such a condition. In fact, at the time he applied for SSI benefits, Plaintiff did not indicate that he had any spinal or head impairment. See AR 147.

Second, although Plaintiff had a positive tuberculosis test, the record indicates that he has not had any symptoms related to his tuberculosis. See, e.g., AR 730, 792, 795. Plaintiff has not pointed to any other medical records

4

which document that his tuberculosis was sufficiently severe to impact his ability to perform work-related functions. Similarly, although Plaintiff has been diagnosed with hypertension, the record reflects that the condition is generally well controlled when Plaintiff is compliant with his medication. See AR 465, 743. See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Finally, Plaintiff argues that the ALJ should have found his "affective mood disorder" severe at step two. The ALJ found Plaintiff's schizoaffective disorder severe at step two and incorporated various resultant limitations into the RFC assessment. AR 35, 37. Plaintiff does not explain how his affective mood disorder provides any greater mental limitations than those already found by the ALJ.

At step two of the sequential evaluation, the claimant bears the burden of showing that his impairments are severe. Plaintiff has failed to meet that burden with respect to any spinal or head trauma, tuberculosis, hypertension, or affective mood disorder. The fact that Plaintiff may have various other diagnosed conditions does not, without more, demonstrate that any of these conditions prevents him from performing any work-related functions for a 12-month period. Accordingly, the ALJ's conclusion that Plaintiff's other impairments were nonsevere was supported by substantial evidence in the record, and Plaintiff is therefore not entitled to relief.

**B.    The ALJ Properly Assessed Plaintiff's RFC**

Plaintiff argues that the ALJ should have assessed greater limitations in the RFC assessment due to Plaintiff's sleep apnea. Pl.'s Cross-Motion at 2. The ALJ found Plaintiff's sleep apnea severe at step two and limited Plaintiff to medium work with "no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." AR 37. Plaintiff does not explain what further

limitations the ALJ should have included in the RFC assessment due to his sleep apnea.

However, as noted by the ALJ, the limited medical evidence demonstrates that Plaintiff's sleep apnea was not especially severe. <u>See</u> AR 39. Moreover, the medical records indicate that Plaintiff's apnea was significantly improved with use of a CPAP machine. AR 440. Although Plaintiff's homelessness may have prevented him from use of a CPAP machine, <u>see</u> AR 54, and benefits cannot be denied because a claimant is unable to afford treatment, <u>Warre</u>, 439 F.3d at 1006, Plaintiff has not explained how his sleep apnea, even when untreated, causes any greater functional limitations than already found by the ALJ. Accordingly, the ALJ properly assessed Plaintiff's RFC, and Plaintiff is therefore not entitled to relief on this claim of error.

## C. <u>The ALJ Did Not Err in Failing to Address the Effects of Plaintiff's Medication</u>

Plaintiff contends that the ALJ erred by failing to address the side effects of Plaintiff's psychiatric medications. Pl.'s Cross-Motion at 3. "The ALJ must consider <u>all factors</u> that might have a 'significant impact on an individual's ability to work.'" <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993) (quoting <u>Varney v. Secretary of Health & Human Serv.</u>, 846 F.2d 581, 585 (9th Cir. 1988)), relief modified, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." <u>Erickson</u>, 9 F.3d at 818; <u>Varney</u>, 846 F.3d at 585 ("[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with his ability to work. <u>See</u> <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that "passing mentions of the side effects of . . . medication in some of the medical records"

6

was insufficient evidence where no side effects were severe); <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (finding no error in ALJ's lack of discussion regarding drowsiness from medication where the only evidence of side effects came through the claimant's subjective testimony); <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985) (finding no error where medical evidence did not show that claimant's prescribed narcotics limited his ability to care for himself or relate to others).

Here, Plaintiff testified at the administrative hearing that "there [were] no side effects" caused by Abilify and Paxil, the psychiatric medications Plaintiff was taking. AR 38 (citing AR 56). Although Plaintiff testified that his physician changed his dosage of the two drugs, the reason for the change was apparently because Plaintiff was getting nauseated and overheated from being outside. AR 56. Moreover, a review of Plaintiff's medical records reveals no objective evidence of disabling side effects from his medications. Plaintiff does not specifically identify what side effects his medications may have caused, nor does he explain how these alleged side effects negatively affected his ability to perform any work-related functions.

Accordingly, Plaintiff has failed to meet his burden of producing medical evidence to show that any claimed side effects from his medication are severe enough to interfere with his ability to work. <u>See</u> <u>Osenbrock</u>, 240 F.3d at 1164.

**D.    <u>The ALJ Properly Determined that Plaintiff's Impairments Did Not Meet or Equal a Listed Impairment</u>**

Plaintiff contends that the ALJ erred by failing to find, at step three of the sequential evaluation process, that his mental impairments meet or equal Listing 12.04 [Affective Disorder] or Listing 12.05(C) [Intellectual Disability]. Pl.'s Cross-Motion at 2, 3. The ALJ specifically concluded that Plaintiff's severe impairment of schizoaffective disorder did not meet or equal Listing 12.04. AR 35-36. The ALJ did not address whether Plaintiff met or equaled

7

Listing 12.05.

### 1.   Applicable Law

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (1995). Thus, "[i]f the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."Sullivan v. Zebley, 493 U.S. 521, 525 (1990) quoting 20 C.F.R. § 416.920(d).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Id. (quoting 20 C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100; see 20 C.F.R. § 416.926.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported

conclusion that, or discuss why, claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." See Warre, 439 F.3d at 1006.

### 2.   Listing 12.04

Here, the ALJ properly determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listing 12.04. AR 35-37. Although Plaintiff contends that he has a listing-level mental impairment, he fails to specifically demonstrate how he meets the listing criteria. In order to meet Listing 12.04, a claimant must not only provide medically documented findings of specified signs and symptoms but must also satisfy the criteria in either Paragraph B or Paragraph C of the Listing. See 20 C.F.R., subpt. P, app. 1 § 12.04.

Paragraph B requires that Plaintiff's symptoms result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. § 12.04(B).[1] Here, the ALJ made specific findings in each of the four functional areas. See AR 36. Here, the ALJ found that Plaintiff had only "mild" limitations with respect to daily activities; "moderate" limitations in social functioning and in maintaining

---

[1] The term "repeated episodes of decompensation, each of extended duration," means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. 404, subpt. P, app. 1 § 12.00(C)(4). If a claimant has "experienced more frequent episodes of shorter duration or less frequent episodes of longer duration," the ALJ "must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." Id.

9

concentration, persistence or pace; and there was no evidence of episodes of decompensation. AR 36. Therefore, the ALJ properly found that Plaintiff failed to satisfy the Paragraph B criteria. See 20 C.F.R. § 416.920a(b)(2), (c), (e)(2).

Nor did Plaintiff proffer evidence to satisfy the Paragraph C criteria. Paragraph C requires medical evidence of a chronic affective disorder lasting at least two years and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a prediction that a minimal change in the claimant's environment would cause him to decompensate; or (3) a current history of at least one year's inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. § 404, subpt. P, app. 1 § 12.04(C). The ALJ specifically noted that Plaintiff was "stable while incarcerated and the level of services he required was reduced from EOP as a result, when he was paroled." AR 36. As noted by the ALJ, the longitudinal medical record demonstrates that Plaintiff's condition was generally stable as long as he remained compliant with his psychiatric medications. See, e.g., AR 235-38, 250, 817.

Furthermore, the ALJ found Plaintiff to be not fully credible, a conclusion which Plaintiff does not challenge on appeal, based in part upon Plaintiff's feigning of psychiatric symptoms. See AR 39 ("The claimant has been noted to essentially request that a provider teach him how to feign psychiatric symptoms to get into ETS.") (citing AR 356). In addition, Plaintiff admitted feigning suicidal ideation while in prison, AR 362, and was found to be "possibly not forthcoming about symptom presentation, as reports of AH [auditory hallucinations] are highly suspicious," AR 214.

Plaintiff contends that two Global Assessment of Functioning ("GAF") scores of 45 in his treatment notes from April 2010 demonstrate that he meets

1  or equals Listing 12.04. Pl.'s Summary at 3.[2] Plaintiff's reliance on these GAF
2  scores is without merit for two reasons. First, "[i]n evaluating the severity of a
3  claimant's mental impairments, a GAF score may help guide the ALJ's
4  determination, but an ALJ is not bound to consider it." Baker v. Astrue, No.
5  08-3199, 2009 WL 279085, at *3 (C.D. Cal. Feb. 4, 2009). Second, although
6  Plaintiff had GAF scores of 45 on April 10, 2010, he was found to have a GAF
7  score of 60 only six days later, a score which is generally consistent with his
8  other GAF scores throughout the treatment record. See AR 215, 226, 408, 810,
9  879, 896.[3]

Because the overall treatment record demonstrates that Plaintiff
10 generally suffered from only moderate mental limitations, he has failed to meet
11 his burden of demonstrating that he meets or equals Listing 12.04.

12

13 **3.   Listing 12.05**

14 Plaintiff also contends that he meets or equals Listing 12.05(C). Pl.'s
15 Cross-Motion at 3. Listing 12.05 [Intellectual Disability] provides:

16       Intellectual disability refers to significantly subaverage
17       general intellectual functioning with deficits in adaptive
18       functioning initially manifested during the developmental period;

19

----

20    [2] A GAF score of 41 to 50 indicates serious symptoms or a serious
impairment in social or occupational functioning. See Diagnostic and
21 Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000). The
Commissioner has declined to endorse GAF scores, 65 Fed. Reg. 50764-65
22 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity
requirements in our mental disorders listings"), and the most recent edition of
23 the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and
24 questionable psychological measurements in practice.  Diagnostic and
Statistical Manual of Mental Disorders 16 (5th ed. 2012).
25

26    [3] A GAF score of 60 reflects moderate symptoms or "moderate difficulty
27 in social, occupational, or school functioning."

28

i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*\*\*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404, Subpt. P, App. 1, § 12.05.

Plaintiff provides absolutely no explanation or citation to the record in support of his contention that he has an intellectual disability which meets or equals each of the required elements of Listing 12.05(C).

When considering the record as a whole, it is clear that Plaintiff has not met his burden of showing that he meets or equals each of the required elements of Listing 12.05(C). See Bowen, 482 U.S. at 145-152 (placing burden on claimant to produce evidence that his impairment meets a listing); see also Sullivan, 493 U.S. at 530 (noting that "[a]n impairment that manifests only some of [the listed] criteria, no matter how severely, does not qualify"). The ALJ reviewed all of the medical evidence in detail and correctly found, at step three of the sequential analysis, that Plaintiff's impairments do not meet or equal Listing 12.04. Nor has Plaintiff met his burden of demonstrating that he has an intellectual disability which meets or equals Listing 12.05(C). Plaintiff is therefore not entitled to relief.

**E.    The ALJ Properly Considered the Record as a Whole**

Plaintiff contends that the ALJ should have found him disabled based upon two forms prepared in September 2010 and January 2011 by a licensed clinical social worker. Pl.'s Summary at 5-7. On a check-box form entitled "Parole Plan Summary," Plaintiff's social worker checked a box indicating

that Plaintiff was not capable of gainful employment. AR 547, 582.

A licensed clinical social worker does not meet the Social Security Regulations' requirements for an "acceptable medical source." 20 C.F.R. § 416.913(a). Information from "other sources," such as a licensed clinical social worker, cannot establish the existence of a medically determinable impairment. SSR 06-03p; see also Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (opinions from "other sources" can be afforded "less weight than opinions from acceptable medical sources."). In addition, the ultimate determination as to whether a claimant is disabled is an issue reserved to the Commissioner. See 20 C.F.R. § 416.927(d)(1). Therefore, because these forms were not highly probative of Plaintiff's disability, the ALJ was not required to directly address them. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that an ALJ is not required to discuss every piece of evidence).

Even if the ALJ erred in not stating express reasons for discounting this social worker's opinion of disability, any error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). To establish reversible error, Plaintiff must specifically show that the social worker's written testimony, if credited, would alter the ultimate nondisability determination. See id. at 1116 (citing Robbins, 466 F.3d at 885) (reaffirming that an ALJ's decision will be reversed when omitted lay testimony, if credited, leads to a different disability conclusion)). Plaintiff has not made any such showing. The ALJ thoroughly reviewed the record and reasonably concluded that Plaintiff was not disabled, a conclusion which would not reasonably be contradicted by the two forms filled out by Plaintiff's social worker.

///

///

///

# V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:   July 31, 2015

_____

DOUGLAS F. McCORMICK
United States Magistrate Judge

14